UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY ALAN CONNELL,
    PLAINTIFF,

"ORIGINAL COPY"

V.

WAYMAN E. TATE,
DARIOUS INZAR,
DANNY THOMPSON,
MICHAEL ESFORD,
KEISHA CAIN,
    DEFENDANT(S).

CASE No.: 3:10-CV-221-J-20JRK

FILED 2010 JUL 14 A 11:31
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

AMENDED CIVIL RIGHTS COMPLAINT
DEMAND FOR JURY TRIAL

ANSWER ALL OF THE FOLLOWING QUESTIONS:

1. PLACE OF PRESENT CONFINEMENT: UNION CORRECTIONAL INSTITUTION.

2. DOES YOUR COMPLAINT CONCERN EVENTS IN A STATE PRISON FACILITY WITHIN THE FLORIDA DEPARTMENT OF CORRECTIONS? YES

[IF YOUR ANSWER IS "YES", AFTER REVIEWING THE EXHAUSTION REQUIREMENTS, ANSWER THE FOLLOWING QUESTIONS]

EXHAUSTION OF ADMINISTRATIVE REMEDIES: PURSUANT TO THE PRISON LITIGATION REFORM ACT OF 1995, TITLE VIII, SECTION 803 AMENDMENTS TO CIVIL RIGHTS OF INSTITUTIONALIZED PERSONS ACT, EXHAUSTION OF ADMINISTRATIVE REMEDIES IS REQUIRED IN ANY ACTION BROUGHT WITH RESPECT TO PRISON CONDITIONS UNDER 42 U.S.C. § 1993 OR ANY OTHER FEDERAL LAW, BY A PRISONER CONFINED IN ANY JAIL, PRISON OR OTHER CORRECTIONAL FACILITY. ANY REQUIRED GRIEVANCES, APPEALS, AND RESPONSES MUST BE SUBMITTED TO THE COURT TO VERIFY EXHAUSTION. (IF YOUR COMPLAINT

CONCERNS CONDITIONS AT STATE PRISON FACILITIES, YOU MUST ANSWER THE FOLLOWING QUESTIONS IN SECTION II OF THIS FORM. IF THE COMPLAINT CONCERNS CONDITIONS AT A COUNTY JAIL OR LOCAL CORRECTIONAL FACILITY, YOU MUST COMPLETE SECTION III OF THIS FORM.)

<u>EXHAUSTION STEPS ORDINARILY REQUIRED FOR COMPLAINTS ABOUT CONDITIONS AT STATE PRISON FACILITIES:</u>

<u>GENERAL GRIEVANCE</u>
1. INFORMAL GRIEVANCE (FORM DC3-005)
2. FORMAL GRIEVANCE     (FORM DC1-303)
3. APPEAL TO OFFICE OF THE SECRETARY (FORM DC1-303)

<u>OTHER GRIEVANCE</u>
INMATES ARE NOT REQUIRED TO UTILIZE THE INFORMAL GRIEVANCE PROCESS IN THE CASE OF AN EMERGENCY GRIEVANCE, A GRIEVANCE OF REPRISAL, A GRIEVANCE OF A SENSITIVE NATURE, A GRIEVANCE ALLEGING VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, A MEDICAL GRIEVANCE, A GRIEVANCE INVOLVING ADMISSIBLE READING MATERIAL, A GRIEVANCE INVOLVING GAIN TIME GOVERNED BY RULE 33-11.0065 INCENTIVE GAIN TIME OR A GRIEVANCE INVOLVING DISCIPLINARY ACTION (DOES NOT INCLUDE CORRECTIVE COUNSELING) GOVERNED BY CHAPTER 33-22. THE GRIEVANCE STEPS ARE SET FORTH IN FLA. ADMIN. CODE CHAPTER 33-29.

<u>QUESTIONS:</u>
<u>A. EMERGENCY GRIEVANCE, GRIEVANCE OF REPRISAL, GRIEVANCE OF A SENSITIVE NATURE, GRIEVANCE ALLEGING VIOLATION OF THE AMERICAN WITH DISABILITIES ACT, MEDICAL GRIEVANCE, GRIEVANCE INVOLVING ADMISSIBLE READING MATERIAL, GRIEVANCE INVOLVING GAIN TIME GOVERNED BY RULE 33-11.0065 INCENTIVE GAIN TIME OR GRIEVANCE INVOLVING DISCIPLINARY ACTION GOVERNED BY CHAPTER 33-22 (REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL, BYPASSING THE INFORMAL GRIEVANCE STEP.)</u>

1. Did you submit an above mentioned grievance to the Superintendant and/or to the Office of the Secretary (Form DC1-303)?
   "Yes. Exhibit 'A' attached"

2. If so, you must attach a copy of the grievance and response to this complaint form.

3. Were you denied emergency status? Yes ( )  No (X)

   A) If so, did you go through the informal grievance, formal grievance and appeal process? Yes ( )  No (X)

   B) If so, you must attach a copy of the grievance/appeals and responses to this complaint form.

B. Informal Grievance (Request For Interview)

1. Did you submit an informal grievance (Form DC3-005)? Yes ( )  No (X)

2. If so, you must attach a copy of the grievance and response to this complaint form.

C. Formal Grievance (Request for Administrative Remedy or Appeal)

1. Did you have a disciplinary hearing concerning this matter?
   Yes ( )  No (X)

2. If so, you must attach a copy of the disciplinary report and disciplinary committee's findings and decision to this complaint form.

3. Did you submit a formal grievance (Form DC1-303)?
   Yes (X)  No ( ) (See "Exhibit A")

4. If so, you must attach a copy of the grievance and response to this complaint form.

D. **APPEAL TO THE OFFICE OF THE SECRETARY (REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL)**

1. Did you submit an appeal to the Office of the Secretary (Form DC1-303)?
   Yes (X)   No ( )   (See "Exhibit B")

2. If so, you must attach a copy of the appeal and response to this complaint form.

I declare under penalty of perjury that the foregoing answers to the questions in this section are true and correct.

Signed this 12th day of April, 2010.

*Timothy A. Connell*
Signature of Plaintiff:
Timothy Allen Connell - DC# T11890

PREVIOUS LAWSUITS:

A. Have you initiated other lawsuits in STATE COURT dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( )  No (X)

B. Have you initiated other lawsuits in FEDERAL COURT dealing with the same or similar facts involved in this action or otherwise relating to your imprisonment or conditions thereof? Yes ( )  No (X)

C. If your answer to either A or B is yes, describe each lawsuit in the space provided below. If there is more then one lawsuit, describe all additional lawsuits on a seperate piece of paper.

   1. Parties to previous lawsuit(s): N/A

D. Have you initiated lawsuits or appeals from lawsuits in federal court that have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted? If so, identify these suits below by providing the case number, the style and the disposition of each case: N/A

V. PARTIES: In Part A of this section, indicate your full name in the first blank and your full mailing address in the second blank. Do the same for each additional plaintiff named in the complaint (if any) in Part B of this section:

   A. Name of Plaintiff: Timothy Allen Connell - DC# T11890
      Mailing Address: c/o Union Correctional Institution
                              7819 NW 228th Street
                              Raiford, FL 32026-4000

   B. Additional Plaintiffs: N/A

In Part C of this section, indicate the full name of the first defendant. Also, fill in his or her mailing address, position and where he or she is employed. For any additional defendants, use Part D through G of this section for the names, addresses, positions and places of employment:

C. Defendant: WAYMAN E. TATE
   Mailing Address: c/o Union Correctional Institution
   7819 NW 228th Street
   Raiford, FL 32026-4000
   Position: Correctional Officer Sargeant
   Employed At: Union Correctional Institution

D. Defendant: DARIOUS INZAR
   Mailing Address: c/o Union Correctional Institution
   7819 NW 228th Street
   Raiford, FL 32026-4000
   Position: Correctional Officer
   Employed At: Union Correctional Institution

E. Defendant: DANNY THOMPSON
   Mailing Address: c/o Union Correctional Institution
   7819 NW 228th Street
   Raiford, FL 32026-4000
   Position: Correctional Officer
   Employed At: Union Correctional Institution

F. Defendant: MICHAEL ESFORD
   Mailing Address: c/o Union Correctional Institution
   7819 NW 228th Street
   Raiford, FL 32026-4000
   Position: Correctional Officer
   Employed At: Union Correctional Institution

G. Defendant: KESHIA CAIN
Mailing Address: c/o Union Correctional Institution
7819 NW 228th Street
Raiford, FL 32026-4000
Position: Correctional Officer
Employed At: Union Correctional Institution

## Statement Of Claims

State what rights under the constitution, laws or treaties of the United States have been violated, and be specific. If you intend to allege a number of related claims, set forth each claim in a seperate paragraph. Any claim that is not related to the same basic incident or issue must be addressed in a seperate civil rights form.

1. The actions of Tate, Thompson and Inzar in using physical force against the plaintiff without need or provocation and excessively and vindictively, were done maliciously and sadistically for the purpose of causing harm and not in a good-faith effort to restore order or maintain discipline or for any other legitimate penological reason, and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

2. The actions of Tate, Thompson and Inzar in using physical force against plaintiff without need, provocation or justification constituted the tort of assault and battery under the state law of Florida.

3. The actions of defendants Esford and Cain in failing to intervene to prevent the excessive and misuse of force or otherwise to protect plaintiff from further abuse were done with deliberate indifference and maliciously and sadistically to cause or allow harm to the plaintiff and contributed to

AND PROXIMATELY CAUSED HIS INJURIES IN VIOLATION OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

H. THE ACTIONS OF DEFENDANTS ESFORD AND CAIN IN FAILING TO INTERVENE TO PREVENT THE EXCESSIVE FORCE OR OTHERWISE TO PROTECT PLAINTIFF FROM FURTHER ABUSE CONSTITUTED THE TORT OF NEGLIGENCE UNDER THE STATE LAW OF FLORIDA.

## Statement Of Facts

1. EMPLOYEES OF THE FLORIDA DEPARTMENT OF CORRECTIONS (DOC) ARE AUTHORIZED TO USE A VARIETY OF TYPES OF FORCE WHERE THE CIRCUMSTANCES WARRANT, INCLUDING HANDS-ON PHYSICAL FORCE, CHEMICAL AGENTS, ELECTRONIC IMMOBILIZATION DEVICES, BATONS, AND SPECIALTY MUNITIONS, AS DESCRIBED IN RULE 33-602.210, FLORIDA ADMINISTRATIVE CODE (FAC), PROMULGATED BY THE DOC.

2. RULE 33-602.210(4), F.A.C., PROVIDES THAT PHYSICAL FORCE SHALL BE EMPLOYED ONLY AS A LAST RESORT WHEN IT REASONABLY APPEARS THAT OTHER ALTERNATIVES ARE NOT FEASIBLE TO CONTROL THE SITUATION.

3. RULE 33-602.210, F.A.C., INCLUDES RULES GOVERNING BOTH SPONTANEOUS AND NON-SPONTANEOUS USES OF FORCE.

4. A SPONTANEOUS USE OF FORCE INVOLVES AN IMMEDIATE NEED TO USE FORCE WITHOUT TIME FOR REFLECTION AND PLANNING. A NON-SPONTANEOUS USE OF FORCE OCCURS _AFTER_ TIME FOR REFLECTION.

5. PLAINTIFF'S CLAIMS ARISE FROM THE USE OF NON-SPONTANEOUS FORCE BECAUSE SPONTANEOUS FORCE WAS UNNECESSARY DUE TO HIM DISPLAYING NO AGGRESSIVE OR VIOLENT BEHAVIOR PRIOR TO THE INITIATION OF FORCE.

6. RULE 33-602.210(7), F.A.C., REQUIRES THAT THE WARDEN OR, IN HIS ABSENCE, THE DUTY WARDEN WILL BE CONSULTED AND GIVE HIS OR HER

permission prior to the use of non-spontaneous force.

7. On information and belief, Defendant Wayman E. Tate did not consult and obtain prior approval to initiate force on Plaintiff.

8. Rule 33-602.210(4)(a), F.A.C., requires that all authorized non-spontaneous use of force incidents will be video recorded in their entirety.

9. The defendants failed to videotape the entire use of force because they sought to conceal their abusive conduct and prevent it from being captured on video.

10. Rule 33-208.002(8), F.A.C., says that no employee shall willfully or negligently treat an inmate in a cruel or inhumane manner.

11. Rule 33-208.002(24), F.A.C., provides in relevant part that every employee has the responsibility to protect and safeguard the person of inmates.

12. Rule 33-208.001(4)(a), F.A.C., states that no administrator, warden, officer in charge, supervisor or other employees shall knowingly permit any subordinate, inmate or other person to, nor shall he or she commit any act or engage in any conduct which would violate any state statute, rule, directive or policy statement.

13. The events that led to the vindictive and malicious attack by Defendants Tate, Thompson and Inzar on June 25th, 2009, transpired on June 23rd, 2009 at 6:00 pm. On that date, Defendant Tate, accompanied by Defendant Danny Thompson, approached Plaintiff's cell and ordered him to pack his property so he could be relocated to the disciplinary status wing. Tate needed the Plaintiff's cell vacated to house inmates who were on the suicidal and homicidal observation status.

14. PLAINTIFF REFUSED TO RELOCATE TO THE DISCIPLINARY CONFINEMENT WING BECAUSE THE LOUD NOISES AND CONSTANT DISTURBANCES CREATED BY THE DISCIPLINARY STATUS INMATES WOULD DISTURB HIS DAILY ACTIVITIES.

15. PLAINTIFF THEN IMMEDIATELY REQUESTED TO REMAIN ON THE NON-DISCIPLINARY STATUS WING, WHICH WAS A MORE PEACEFUL ENVIRONMENT.

16. DEFENDANT TATE REPLIED, "I RUN THE SHOW. PACK YOUR SHIT AND BE READY WHEN I GET BACK". STILL, THE PLAINTIFF REFUSED TO MOVE. TATE THEN BECAME UPSET AND HOSTILE, DIRECTING PROFANE AND ABUSIVE LANGUAGE TOWARD PLAINTIFF. TATE STATED THAT IF PLAINTIFF DID NOT CUFF UP (SUBMIT TO HANDCUFFS), THAT HE WAS GOING TO BEAT PLAINTIFF'S ASS. A HEATED ARGUEMENT ENSUED BETWEEN PLAINTIFF AND TATE IN WHICH BOTH USED ABUSIVE AND THREATENING LANGUAGE TOWARD EACHOTHER. DEFENDANTS TATE AND THOMPSON THEN EXITED THE WING TO SUMMON THE CONFINEMENT LIEUTENANT.

17. APPROXIMATELY FIFTEEN (15) MINUTES LATER, LT. KILGORE AND LT. SALLE ARRIVED AND APPROACHED PLAINTIFF'S CELL. PLAINTIFF INFORMED THEM OF HIS PREDICAMENT AND THE THREATS MADE BY TATE TO BEAT HIS ASS FOR REFUSING TO RELOCATE. PLAINTIFF THEN EXPRESSED CONCERNS ABOUT HIS SAFETY BECAUSE OF TATE'S WELL KNOWN REPUTATION TO BEAT INMATES IN RESTRAINTS.

18. BOTH LIEUTENANTS LEFT TO CONSULT WITH TATE AND RETURNED SHORTLY THEREAFTER. AFTER LT. SALLE ENSURED PLAINTIFF THAT NOTHING WOULD HAPPEN TO HIM, HE AGREED TO MOVE AND WAS RELOCATED TO THE DISCIPLINARY CONFINEMENT WING.

19. ON INFORMATION AND BELIEF, DEFENDANT TATE HAS A WELL KNOWN REPUTATION TO PHYSICALLY ABUSE INMATES IN RESTRAINTS WHO DISRESPECT OR INSULT HIM BY DISOBEYING HIS ORDERS AND CONDUCT

WHICH MAKES HIM LOOK BAD IN FRONT OF HIS SUBORDINATES AND SUPERVISORS.

20. THE FOLLOWING DAY, WHICH WAS JUNE 24TH, 2009, AT APPROXIMATELY 5:20PM, TATE APPROACHED PLAINTIFF'S CELL DURING THE FEEDING OF THE EVENING MEALS AND VINDICTIVELY REFUSED TO PROVIDE PLAINTIFF HIS DINNER MEAL. BEFORE LEAVING, TATE STATED HE WANTED PLAINTIFF TO GO TO THE SHOWER TOMORROW SO HE COULD GIVE HIM A "ONE ON ONE", MEANING THAT HE WOULD FIGHT THE PLAINTIFF USING HIS FISTS WITHOUT THE PLAINTIFF BEING IN HANDCUFFS. PLAINTIFF REFUSED HIS CHALLENGE, WHICH WAS A PLOY TO TRICK HIM OUT OF HIS CELL TO BE JUMPED ON IN HANDCUFFS.

21. ON JUNE 25TH, 2009, AT APPROXIMATELY 6:20PM, DEFENDANTS THOMPSON AND INZAR APPROACHED PLAINTIFF'S CELL DURING SHOWERS AND ASKED PLAINTIFF IF HE WAS GOING TO COME OUT AND FIGHT DEFENDANT TATE. AS A PLOY TO GET THEM TO OPEN THE HANDCUFF/FOOD PORT, THE PLAINTIFF SAID YES.

22. PLAINTIFF'S FLAP WAS THEN OPENED AND HE WAS ORDERED TO SUBMIT TO HANDCUFFS. HE THEN PLACED BOTH HANDS ON THE FLAP TO PREVENT IT FROM BEING CLOSED, IN AN ATTEMPT TO GET THE CONFINEMENT OR SHIFT LIEUTENANT TO THE DORM SO HE COULD INFORM THE SUPERVISOR OF TATE'S PLAN TO ATTACK HIM AND THEIR REFUSAL TO FEED HIM THE PREVIOUS TWO (2) DAYS.

23. DEFENDANT INZAR INFORMED PLAINTIFF THAT NO LIEUTENANT WAS BEING CALLED TO THE DORM AND ORDERED HIM TO "CUFF UP".

24. WHEN PLAINTIFF AGAIN REFUSED TO "CUFF UP", INZAR IMMEDIATELY GRABBED PLAINTIFF'S WRISTS WITH BOTH HANDS AND PULLED THEM TOWARD HIM AGGRESSIVELY AND DIRECTED THOMPSON TO, "HURRY UP AND CUFF HIM".

25. DEFENDANT THOMPSON THEN APPLIED THE HANDCUFFS AND

CONNECTED THE SNATCH CABLE TO THE DOOR TO PREVENT PLAINTIFF FROM PULLING HIS HANDS BACK IN THE CELL.

26. PLAINTIFF'S CELL DOOR WAS OPENED AND BOTH, DEFENDANTS THOMPSON AND INZAR ESCORTED HIM TO THE QUARTERDECK, WHERE DEFENDANT TATE WAS AWAITING HIS ARRIVAL.

27. WHEN PLAINTIFF ARRIVED ON THE QUARTERDECK IN FRONT OF THE CONTROL ROOM, TATE IMMEDIATELY GRABBED PLAINTIFF'S HANDCUFFS AND FORCED HIM INTO THE SARGEANT'S OFFICE AND BEGAN PUNCHING HIM REPEATEDLY IN THE UPPER TORSO AND STOMACH, KNOCKING THE WIND OUT OF THE PLAINTIFF AND KNOCKING HIM TO THE GROUND. PLAINTIFF BALLED UP INTO A FETAL POSITION IN AN ATTEMPT TO PROTECT HIS FACE, CHEST AND STOMACH. AT THAT TIME, DEFENDANTS TATE, THOMPSON AND INZAR BEGAN KICKING AND PUNCHING THE PLAINTIFF REPEATEDLY IN THE BACK, SIDE, BUTTOCKS AND HEAD. DESPITE THE PLAINTIFF'S PLEAS FOR THEM TO STOP, THE ABUSE CONTINUED. AT ONE POINT, THOMPSON KICKED PLAINTIFF IN THE LEFT EYE. DURING THE ATTACK, TATE ASKED PLAINTIFF IF HE WAS "GOING TO DISRESPECT ME ANYMORE?" WHEN TATE NOTICED THAT PLAINTIFF'S EYE WAS SWELLING, HE ORDERED THE OTHER DEFENDANTS TO STOP.

28. PLAINTIFF'S HANDCUFFS WERE THEN SWITCHED TO THE BACK AND HE WAS ESCORTED OUT OF THE SARGEANT'S OFFICE. AS PLAINTIFF EXITED THE OFFICE, HE NOTICED THAT DEFENDANTS MICHAEL ESFORD AND KESHEA CAIN WERE STANDING BY IN THE CONTROL ROOM WATCHING THE INCIDENT.

29. AT THE TIME OF THE INCIDENT, ESFORD WAS THE FOOD CART OPERATOR WHO WAS RESPONSIBLE FOR TRANSPORTING THE FOOD CARTS TO AND FROM EACH HOUSING UNIT.

30. DEFENDANTS ESFORD AND CAIN OBSERVED ALL OR PART OF THE

abuse through the open door to the sargeant's office and failed to intervene to protect plaintiff from abuse or further abuse though both had oppertunity to intervene by either physically or verbally stopping the abuse or Cain could have knocked on the control room window and demanded that they stop.

31. Prior to and/or during the attack, the plaintiff did not engage in any aggressive or violent conduct or do anything to provoke the defendants.

32. Defendants Tate, Thompson and Inzar's actions were unneccessary, excessive, wanton and applied maliciously and sadistically for the very purpose of causing harm and not in a good-faith effort to restore order or maintain discipline or for any other penological reason.

33. Defendants Esford and Cain's failure to protect plaintiff were done maliciously and sadistically for the very purpose of allowing harm or further harm to be done to plaintiff and with deliberate indifferance.

34. Confinement Lieutenant Watson arrived and plaintiff was escorted from the holding cell to the medical station for a post-use of force medical examination.

35. Nurse Bickel examined the plaintiff's body and found the following physical injuries: bloodness coloration to left eye "black-eye", swollen and bruised left eye area, large bruise to left side, superficial lacerations to upper torso and head area, swollen knot on forehead and top of head and redness to back, neck, elbow and stomach areas.

36. As a direct and proximate cause of the wrongful acts alleged herein, plaintiff suffered the above bodily injuries and

RESULTING PAINS AND SUFFERING. FOR DAYS THEREAFTER, PLAINTIFF ENDURED A SUBSTANTIAL AMOUNT OF PAINS IN THE TRAUMATIZED AREAS. PLAINTIFF'S PAINS AND SUFFERING SUBSIDED AFTER A COUPLE OF WEEKS.

37. AS A DIRECT AND PROXIMATE RESULT OF THIS ATTACK ON THE PLAINTIFF IN HANDCUFFS, HE SUFFERS FROM CONTINUING ANXIETY, PARANOIA, LOSS OF SLEEP, MENTAL AND EMOTIONAL DISTRESS AND NIGHTMARES,

38. PLAINTIFF WAS EXAMINED BY PHYSICIAN AVILES ON JUNE 26TH, 2009, AND WAS ORDERED X-RAYS AND PRESCRIBED A THIRTY (30) DAY SUPPLY OF 800mg MOTRIN. THE X-RAYS CAME BACK NEGATIVE.

39. EACH DEFENDANT ACTED UNDER THE COLOR OF LAW (STATE) AT ALL TIMES RELEVENT TO THIS COMPLAINT.

40. EACH DEFENDANT IS BEING SUED IN THEIR INDIVIDUAL CAPACITIES.

41. THE PLAINTIFF ALSO ALLEGES THE TORTS OF ASSAULT AND BATTERY, AS WELL AS NEGLIGENCE.

## Relief Requested

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGEMENT GRANTING PLAINTIFF THE FOLLOWING:

1. A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

2. A PRELIMINARY AND PERMANENT INJUNCTION ORDERING DEFENDANT(S) SGT. TATE, OFC. THOMPSON, OFC. INZAR, OFC. ESFORD AND OFC. CAIN TO STOP THE GUARD BRUTALITY AND "CRUEL AND UNUSUAL PUNISHMENT" HARASSMENT, THREATS AND

RETALIATION.

3. COMPENSATORY DAMAGES IN THE AMOUNT OF $75,000.00 AGAINST EACH DEFENDANT JOINTLY AND SEVERALLY.

4. PUNITIVE DAMAGES IN THE AMOUNT OF $75,000.00 AGAINST EACH DEFENDANT JOINTLY AND SEVERALLY.

5. A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY.

6. PLAINTIFF COSTS IN THIS SUIT, ALL LAWYER FEES, COURT COSTS, FILING FEES AND ANY COSTS THAT PLAINTIFF IS CHARGED IN THIS SUIT.

7. ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER AND EQUITABLE.

UNDER THE PENALTY OF PERJURY, I DECLARE THE FOREGOING IS TRUE AND CORRECT.

SIGNED THIS DATE: 4-12-10

/s/ *Timothy A. Connell*
RESPECTFULLY SUBMITTED.
TIMOTHY ALAN CONNELL - DC#T11890
UNION CORRECTIONAL INSTITUTION
7819 NW 228TH STREET
RAIFORD, FLORIDA 32026-4000